[Civ. No. 2454.   Fourth Appellate District.—December 5, 1939.]

HATTIE J. BARCROFT, as Executrix, etc., Respondent, v. CLARA LIVACICH et al., Appellants.

Charleville & Weddell for Appellants.

Albert J. Ford for Respondent.

GRIFFIN, J.—This was an ordinary action in ejectment filed January 5, 1937. Respondent, at the trial, established proof of her representative capacity, the record title to the property in Floretta Fraser, deceased, and claimed that appellants wrongfully ousted her from possession of the premises and that they continued to withhold possession thereof unlawfully and without right. After the production of this evidence respondent rested her case. Appellants moved for a nonsuit, which motion was denied and they thereafter produced evidence in an endeavor to establish their claim of right of possession as alleged in their answer and sought by way of cross-complaint to establish and determine the provisions of a contract of purchase or option claimed to have been entered into between appellants and Floretta Fraser, which contract or option was alleged to have been lost or destroyed.      The ruling of the trial court denying the motion for nonsuit was quite proper. (*Hicks* v. *Lovell*, 64 Cal. 14 [27 Pac. 942, 49 Am. Rep. 679].)

The salient facts necessary to a comprehensive understanding of the issues presented may be thus summarized: Appellant John Livacich testified generally that subsequent to 1919 he became interested in hotel property which belonged to Mrs. Fraser, the deceased, known as the Banning Hotel. In 1924, Mrs. Fraser deeded this hotel property to Mr. Livacich and his then partner, Anton Gilich. A note for $27,000, together with $11,000 cash was the consideration. Thereafter other notes were given by them to Mrs. Fraser over a period of years. In 1931 a trust deed note in the sum of

$40,000 was executed on the hotel property and apparently covered all of the outstanding notes. In May, 1924, at the request of Livacich, Mrs. Fraser purchased adjacent property consisting of several lots on which was located a large house known as the Bramkamp place. When an attempt was made to sell the Bramkamp property to Livacich, he interviewed Mrs. Fraser with whom he had other business dealings and proposed to her that she buy the Bramkamp place for $4,500 and that they later would buy it back from her and give her a commission of $300 upon the deal. Thereupon, Mrs. Fraser bought the property and Livacich and Gilich signed an agreement or option to buy back the place for $4,800. It reads as follows:

"July 22nd, 1924.

"This is to certify that Floretta Fraser Miller (name subsequently changed back to Fraser) agrees to let Livacich and Gillich have the rent of the place bought by her from Dr. Bramkamp for the rent of the rooms now occupied by her at the San Gorgonio Inn, and Livacich and Gillich agrees to same, for one year from the date they can get possession of said Bramkamp place. Mrs. Fraser Miller is not to be at any expense, on the Bramkamp place and the place is to be kept up house and grounds by Livacich and Gillich in good shape. Livacich and Gillich are to have an option to buy in one year, at three hundred dollars net advance over purchase price paid by Mrs. Miller and other expenses incurred by Mrs. Fraser Miller for the year, providing all interest has been paid on San Gorgonio Inn and 2000 cash can be paid on house and lot.

"JOHN LIVACICH.                    ANTON GILICH."

In 1927 Livacich and Gilich dissolved their partnership. It does not appear if or how the 1924 agreement was disposed of or transferred by Gilich. Livacich testified that some time after taking possession, he went to Mrs. Fraser and advised her that he wanted to improve the Bramkamp place so that he could use it in connection with the hotel and therefore wished to enter into a contract of purchase with her; that Mrs. Fraser agreed and that the parties then executed a written contract whereby Livacich agreed to purchase the Bramkamp property from Mrs. Fraser for $4,800, and to pay any expenses which she had incurred in connec-

tion therewith; that Mrs. Fraser agreed to sell the property to him at that price.

Appellants claimed in their answer and this received some support in the testimony of John Livacich, that the lost contract of sale contained additional provisions other than those set out in exhibit 7, which were to the effect that the sums due under the agreement were to be paid as follows: ''Thirty five ($35.00) Dollars on or before the last day of each calendar month after the execution of this contract of purchase; . . . that when the defendants have paid to Floretta Fraser one-half ($\frac{1}{2}$) of the sum due under this contract of purchase, said Floretta Fraser shall execute and deliver to the defendants a grant deed conveying to said defendants title to said property; and at such time defendants shall execute and deliver to the said Floretta Fraser a promissory note bearing interest at the rate of five (5) per cent per annum for the balance of the money due under said contract . . . and said promissory note and interest shall be payable at the rate of thirty-five ($35.00) dollars per month, each installment to be paid on or before the last day of each calendar month following the date of execution . . . and to secure such promissory note defendants shall execute a deed of trust . . . on said property;'' that it was further agreed that the rental due from Mrs. Fraser to Livacich for rooms in the Banning Hotel which were occupied by her and which it was agreed would amount to $35 per month, together with all charges against Mrs. Fraser for meals furnished her by Livacich at the hotel as long as she lived there, were to be credited on that contract against the purchase price.

Livacich testified that thereupon he entered into an extensive improvement campaign upon the premises and expended in the neighborhood of $7,000 therefor; that from time to time Livacich and Mrs. Fraser had an accounting relative to the contract in question and that in January, 1935, the last of these accountings took place, and it is claimed by appellants that it was then determined that Livacich owed Mrs. Fraser $3,208.

In December, 1935, the hotel caught on fire. After the fire the office was claimed to have been ransacked and many papers destroyed. Shortly thereafter, Livacich was sentenced to prison on a manslaughter charge arising out of an automobile accident in which he had been involved. Upon his

return from prison he stated that he attempted to locate the contract in question but up to the time of trial he had been unable to do so.

During his absence the appellant Clara Livacich had attempted to care for his affairs but she was unable to locate the contract in question. In May, 1930, Mrs. Fraser had her insurance agent rewrite her policy of insurance on the Bramkamp property and requested the attachment of a rider reciting that she was selling the property in question to John Livacich under a contract of sale and providing for payment to herself and Livacich as their interests might appear.

The existence of the original of the lost contract or option under which the property was being purchased, was substantiated further by the testimony of other witnesses. All of the testimony concerning the contents of the lost contract and its terms was quite indefinite.

Respondent, on cross-examination of appellant John Livacich, and after he had testified to the facts in relation to the terms of the claimed lost contract of sale, offered in evidence, over appellants' strenuous objections, exhibits 6, 7, 3, 8, and 9. Exhibit 7 reads as follows:

"July 2nd, 1927.

"This is to certify that Floretta Fraser agrees to let John Livacich have the rent of the place bought by her from Dr. Bramkamp, for the rent of the rooms now occupied by her at the San Gorgonio Inn, so long as she cares to occupy them. Mrs. Fraser is not to be to any expense on said Bramkamp place, except taxes, and Ins. John Livacich to have option to buy in six months after she leaves rooms should she decide to do so, by paying $35.00 rent for Bramkamp place per month, for said 6 mo. and *300.00* advance over purchase price, and other expenses incurred by Mrs. Fraser, a copy of which is here made to date, and *2000* cash providing all interest has been paid on San Gorgonio Inn. Balance on trust deed @ 8% quart. Mrs. Fraser to be repaid for taxes, & insurance, but no interest to be charged for same."

On the reverse side of the exhibit, in the handwriting of Mrs. Fraser, is an itemized statement of taxes and insurance paid by her. Exhibit 6 is similar in wording and substance as exhibit 7, with few exceptions, and exhibits 3, 8 and 9 contain certain accounting statements in the admitted handwriting of Mrs. Fraser, which were found among her papers.

Exhibit 8 was a minute account of the purchase price and expenses advanced up to 1935 by Mrs. Fraser on the Bramkamp property, totaling $6,056.59, with a notation thereon that "John Livacich has option to buy". Exhibit 9 purportedly was a similar account in reference to the $40,000 trust deed transaction, showing interest unpaid thereon since 1931, in the approximate sum of $18,000, less deductions for meals as itemized in exhibit 3. On December 17, 1936, according to the pleadings, the deed of trust upon the hotel property was foreclosed *for nonpayment of interest amounting to more than $10,000.*

The court found generally that the parties duly executed the option agreement (exhibit 5) dated July 22, 1924, and the agreement (exhibit 7) dated July 2, 1927, and that the endorsements thereon were in the handwriting of Mrs. Fraser and that they were the only contracts made between the parties respecting the Bramkamp property; that "John Livacich and Clara Livacich have been in possession of said property since July 2, 1927, pursuant to said contract of July 2, 1927, and not otherwise"; that Mrs. Fraser paid taxes and expenses on the property in the sum of $303.90 from May, 1924, to July 2, 1927, and the sum of $1252.68 for said purpose from July 2, "1937" (1927) until her death; that appellants made repairs to the property at a cost in excess of $4,000 with the knowledge of Mrs. Fraser and without objection by her, but that she did not "encourage said work".

Appellants claim that the credit for room and meals furnished Mrs. Fraser should have been credited to the contract for the purchase of the Bramkamp property. Respondent claims and the court found that the charges for meals and other incidentals furnished her under their agreement should have been and were applied to the interest and indebtedness due under the $40,000 trust deed on the Banning Hotel property; that the appellants did not pay the sum of $2,000 mentioned in the agreement or any part thereof and did not pay the taxes or expenses on the property which were advanced by Mrs. Fraser nor the interest due on the indebtedness secured by the trust deed on the Banning Hotel property nor the $4,800 due on the purchase price of the Bramkamp property nor the $35 per month rent due for that property for six months after the death of

Mrs. Fraser occurred on April 17, 1936, as set forth in their agreement.

It was further found that appellants offered to pay $35 rent in May, 1936, and $35 in December, 1936, but that those payments were not accepted and no other or further payments were offered; that accountings were had from time to time between the parties during the life of the contract, but that it was not true that it was ever determined that the balance of the purchase price was $3,280 as claimed by appellants; that the only right of appellants to possession of the property was pursuant to the agreement dated July 2, 1927 (exhibit 7); that respondent was not estopped, as pleaded by the appellants, from asserting her rights under the agreement, by virtue of her claimed acts and conduct in allowing appellants to improve the property in the manner above mentioned; that on December 17, 1931, appellants entered into possession of the premises without right, and unlawfully ousted respondent from possession, and continued to so withhold possession without lawful right. The court gave judgment for the possession of the premises and damages in the sum of $600 for unlawful withholding of the same. From this judgment appellants have perfected this appeal.

Appellants contend that the judgment in question should be reversed upon the following grounds: (1) that it was prejudicial error to admit in evidence plaintiff's exhibits 3, 6, 7, 8 and 9, upon the ground that they were self-serving, private memoranda; (2) that the evidence established, without conflict, that the plaintiff was estopped to deny the existence of defendant's rights in the property in question; and (3) that the evidence was insufficient to sustain the findings of fact and that the findings did not sustain the judgment.

It must be borne in mind that in an action in ejectment, the matter in litigation is the alleged right to the possession of the demanded premises on the part of the plaintiff, and her ouster by defendants, and not the title to the land. (*Porter* v. *Garrisino*, 51 Cal. 559.) It is the rule in this state that where the legal title to the property is in the plaintiff and that fact is admitted by the defendants, as is the case here, defendants cannot successfully defend against an action in ejectment unless they make out in their answer

a complete equitable title in themselves with the right of possession thereunder. (*Wallace* v. *Maples,* 79 Cal. 433 [21 Pac. 860]; *Flint* v. *Conner,* 53 Cal. App. 279 [200 Pac. 37]; *Dorn* v. *Baker,* 96 Cal. 206 [31 Pac. 37]; *Meeker* v. *Dalton,* 75 Cal. 154 [16 Pac. 764].) The decisions of this court are replete with the announcements of the above principles and we need not here pause for further citations. ■ Where a vendee in possession under a contract of purchase has failed to perform his part of the contract and is in default in respect thereto without excuse, he cannot maintain an equitable defense to an action in ejectment by the vendor who is the holder of the legal title. (*Connolly* v. *Hingley,* 82 Cal. 642 [23 Pac. 273]; *Howard* v. *Hewitt,* 139 Cal. 614 [73 Pac. 414]; *Helm* v. *Wilson,* 76 Cal. 476 [18 Pac. 604]; *Flint* v. *Conner, supra.*)

■ Appellants contend that under the circumstances of this case the admission of the exhibits above enumerated was prejudicial error, citing *Ringland* v. *Hockensmith,* 99 Cal. App. 66, 71 [277 Pac. 902]; *Thompson* v. *Orena,* 134 Cal. 26, 30 [66 Pac. 24]; sec. 1946, Code Civ. Proc.; *Ensign* v. *Southern Pac. Co.,* 193 Cal. 311, 320 [223 Pac. 953]; *Harper* v. *Goldschmidt,* 156 Cal. 245, 250 [104 Pac. 451, 134 Am. St. Rep. 124, 28 L. R. A. (N. S.) 689]; *Lynch* v. *Bekins Van & Storage Co.,* 31 Cal. App. 68, 71 [159 Pac. 822]; *Rulofson* v. *Billings,* 140 Cal. 452, 459 [74 Pac. 35]; *Kerns* v. *Dean,* 77 Cal. 555 [19 Pac. 817].)

■ Declarations of a person, since deceased, not against, but in support of his own interests, and made outside the presence of the party sought to be bound by them, are not admissible in favor of those who claim rights which the declarations would maintain. (*Steinberger* v. *Young,* 175 Cal. 81 [165 Pac. 432].) They have no greater force as evidence in an action brought subsequent to the death of the declarant than they would have in an action brought by him in his lifetime. (*Fischer* v. *Bergson,* 49 Cal. 294; *Bedell* v. *Scoggins,* 5 Cal. Unrep. 66 [40 Pac. 954].) ■ Although an administrator is not permitted to prove the mere declarations of the decedent in his own favor, he is entitled to prove his acts under a contract sued upon and any declarations made at the time and characterizing them as part of the *res gestae.* (*Mattingly* v. *Pennie,* 105 Cal. 514 [39 Pac. 200]; 10 Cal. Jur., sec. 331, p. 1100.)

When a grantor has parted with title to property, his acts and declarations in disparagement thereof, made in the absence of the grantee, are admissible in evidence; but whenever in a particular action the issue itself is whether the grantor has parted with title, it is the settled rule of law in this state that his subsequent acts and declarations are admissible as bearing on the *question of delivery*. In *Belser* v. *American Trust Co.,* 125 Cal. App. 344 [13 Pac. (2d) 951], certain memoranda were found among decedent's personal effects and were held admissible as tending to show his interest in the property. It does not appear, however, from the authorities cited that the exhibits complained of in the instant case were admissible.

Respondent was fully justified in refusing payment of two months' rent on the premises. It has been repeatedly decided and is undoubtedly the law of this state that a vendor by accepting payments after the times specified in the agreement for sale of real property, waives any provision with reference to time being the essence of the contract as to those payments and cannot thereafter effectually declare a forfeiture of vendee's right to purchase and of payments already made without notice that in the future a strict performance will be required. (*Watkins* v. *Warren,* 122 Cal. App. 617 [10 Pac. (2d) 500].)

Appellants contend that respondent was estopped to deny that they agreed to purchase the property in question from Mrs. Fraser because of the fact that the latter stood by and saw the former erect improvements on the property under the belief that they were purchasing the same, citing *Burrow* v. *Carley,* 210 Cal. 95, 104 [290 Pac. 577], and *Farley* v. *Vaughn,* 11 Cal. 227, 237.

It is clear from the evidence before us that the trial court was justified in finding against appellants upon the plea of estoppel. From an examination of the agreement dated July 22, 1924, admittedly signed by John Livacich, which was properly received in evidence without objection, although poorly phrased, it could be properly termed an option to purchase the property upon the conditions therein set forth. It is apparent that appellant John Livacich did not fulfill the conditions of the option nor did he tender the $2,000 mentioned or pay the interest on the trust deed. He was therefore accordingly in default under that option. The trial court

has construed this instrument in connection with exhibit 7 as an option to purchase the property by appellants and has, by its findings, established the claim under which the only right of appellants to possession of the property could be predicated. It appears from the evidence that appellants are in default under their option to purchase under either instrument or under appellant's own version of the terms of the lost contract or option. No tender of the consideration or adequate offer to perform was made in accordance with the terms thereof. (*Champion G. Min. Co.* v. *Champion Mines,* 164 Cal. 205 [128 Pac. 315].)

The contract or option was in contemplation of improvements. The fact that improvements were made is no ground for altering the contract or option. It seems to be the rule that to establish estoppel there must be some degree of turpitude in the conduct of a party before a court of equity will estop him from the assertion of his title; and accordingly the trial court was justified in finding that respondent was not estopped in this action by the fact that appellants in good faith constructed improvements on the lands claimed by them. (*Holzer* v. *Read,* 216 Cal. 119 [13 Pac. (2d) 697]; *Humboldt County* v. *Van Duzer,* 48 Cal. App. 640 [192 Pac. 192]; *Frazier* v. *Murphy,* 133 Cal. 91 [65 Pac. 326].)

It was held in *Gervaise* v. *Brookins,* 156 Cal. 103 [103 Pac. 329], that a vendee in possession of land, under a contract which entitles him to a conveyance of the fee thereof and to remain in possession only so long as he makes the payments of the purchase price as agreed, who has paid a substantial part of the price and made valuable improvements on the land, and is able, willing and ready, and has offered to pay the balance upon receipt of a good title, but who does not wish to rescind and refuses to make further payments except on condition that he receives a good title, is not entitled to remain in possession against the vendor who has no title and is unable to transfer it.

The rule of law regarding sufficiency of evidence to establish the contents of a lost instrument is well stated in the case of *Caine* v. *Briscoe,* 78 Cal. App. 660 [248 Pac. 774], where the court comments on ''placing sole reliance for the support of an important issue upon the frailties, or as truly may be said, the treachery of human memory, the burden of proving the fact necessarily carries with it more than the usual measure of

responsibility". Also in *Deacon* v. *Bryans*, 88 Cal. App. 322 [263 Pac. 371], it was held that the evidence must show without reasonable doubt the substantial parts of the instrument and that the testimony of the witness need not be accepted as true, merely because there is no direct evidence to contradict it, as evidence may, within itself, bear the earmarks of falsity.

The testimony of appellant John Livacich was impeached in many ways. His statement of the contents of the claimed lost instrument was so vague and uncertain that any court would be justified in disregarding his entire testimony in relation thereto. (*Bailey* v. *Moshier*, 35 Cal. App. 345, 349 [169 Pac. 913].) No weaker kind of testimony can be produced than the unsupported testimony of a single person, as to a conversation between himself and a deceased person. (*Mattingly* v. *Pennie, supra.*)

Appellants were permitted to remain in possession of the property for more than nine years while Mrs. Fraser paid all taxes and insurance thereon. They failed to pay the purchase price of the property and interest on the $40,000 trust deed as agreed. The burden of proof of all claimed payments on the alleged lost contract or option was on appellants. (*Griffith* v. *Lewin*, 125 Cal. 618 [58 Pac. 205] ; 20 Cal. Jur., p. 952, sec. 30.)

One who appeals to a court of equity to defend him against title to land of which he is in possession must do equity by paying the price which he agreed to pay. The maxim "he who seeks equity must do equity" applies to him in full force. Appellants, under the circumstances of this case, were not entitled to hold possession and withhold the purchase price. (*Empire Investment Co.* v. *Mort*, 169 Cal. 732 [147 Pac. 960].)

The fact of title being in respondent was admitted by appellants in their answer. Therefore they could only prevail against her by setting up an equitable defense. The equity presented must be of such a character that it may be ripened by a decree into a complete equitable title in themselves and a legal right to the possession of the premises or such a right as will estop her from the prosecution of the action. (*Verbeck* v. *Clymer*, 202 Cal. 557 [261 Pac. 1017].)

It appears to us that there is sufficient evidence in the record without the use of the objectionable exhibits, to substantiate the findings of the trial court in reference to some

option to purchase. Conceding that these exhibits should not be considered in reference to the option to purchase, it is clear that the court has wholly disregarded appellants' testimony and in effect has found that his testimony did not establish a contract of purchase as represented by him, the terms of which had been fulfilled by him, and which would give him an equitable title with the right of possession of the property.

Appellants contend that under any of the circumstances involved in this action, before Livacich could be placed in default the respondent, before filing her action in ejectment, was required to tender a deed and demand performance under the contract alleged by Livacich or the agreement which the court found to exist, citing *Boone* v. *Templeman,* 158 Cal. 290, 297 [110 Pac. 947, 139 Am. St. Rep. 126], and *Bank of America* v. *Ries,* 128 Cal. App. 75, 77 [16 Pac. (2d) 1018].

It appears that neither the heirs of Floretta Fraser, deceased, nor the administratrix of her estate knew, nor were they informed of the nature of the tenancy of appellants. It would therefore be a mechanical view of the law if it, previous to the filing of the action for ejectment, required the administratrix, under the circumstances here related, to demand performance of a claimed lost contract which she never knew existed. She likewise had no means of knowing the terms of it until the trial court found that one did exist and declared its terms after the filing of the answer and cross-complaint. There would be no duty on the part of the administratrix to tender a deed when she, as administratrix, had no legal authority so to do. (Sec. 850, Prob. Code; *Mayer* v. *West,* 96 Cal. App. 31 [273 Pac. 849].) The possession, therefore, became wrongful as against the respondent administratrix and no demand for possession was necessary on the part of the respondent before bringing the action of ejectment. (*Joy* v. *McKay,* 70 Cal. 445 [11 Pac. 763].) It appears further that a demand for payment of the amount due under the contract or option as found by the court would have been futile because of one fact, at least, that the trust deed had been foreclosed on the hotel property, through the fault of appellants, for nonpayment of interest, and therefore the payment of that amount as a condition precedent would be not only exorbitant compared to the value of the property here involved but would be a condition practically

impossible of performance at that time. Under such circumstances, a demand would have been unnecessary. (*Bruschi* v. *Quail Min. etc. Co.*, 147 Cal. 120 [81 Pac. 404]; *Briles* v. *Paulson*, 170 Cal. 408 [149 Pac. 804].)

Appellants having failed to meet the burden cast upon them to prove their right of possession, the trial court, notwithstanding the errors complained of, was fully justified in its ultimate finding in favor of respondent and in entering judgment thereon.

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 1, 1940.