[Civ. No. 18291. First Dist., Div. Two. July 29, 1959.]

BERTHA M. HALL, an Incompetent Person, etc., Respondent, v. SAN JOSE ABSTRACT AND TITLE INSURANCE COMPANY (a Corporation), Appellant.

Royal E. Handlos for Appellant.

Toff & Ehlman for Respondent.

DOOLING, J.—This is an appeal by defendant company from a judgment for plaintiff, Bertha Hall, in her action based upon a title insurance policy issued by defendant. The complaint sought damages suffered because of an error contained in the policy, misdescribing the title of property purchased by plaintiff and her husband. A second count sought damages incurred because of the negligence of defendant's agents in searching records and in reporting on the status of the title to the property.

In December 1945 respondent and her husband purchased certain real property in Mountain View and appellant acted as the escrow agent and title abstractor in the transaction. On June 26, 1946, appellant caused the deed to the property to be recorded and thereafter issued its policy of title insurance which recited that on June 26, 1946, title to the property was vested in "ALBERT E. HALL and BERTHA M. HALL, husband and wife, as joint tenants."

There was evidence that it was the intention of respondent's husband that the property be held in joint tenancy and that it was his belief that it was so held. On November 8, 1949, his will was executed containing no specific reference to this property but providing that respondent should have a life estate in his interest in the community property. Respondent's husband died on August 25, 1950.

On September 22, 1950, a decree establishing the fact of death was filed decreeing that by reason of decedent's death, respondent became vested with absolute title to the property involved in this appeal. During the process of probating the estate and until the estate was closed in April of 1951, this property was treated as joint tenancy property. The deed to the property had been delivered to appellant on April 6, 1946, and remained in appellant's file until August 6, 1953.

In the spring of 1953, respondent retained an attorney to

represent her in the sale of this property and on July 29, 1953, a purchase and sale agreement was executed by respondent and Mr. and Mrs. Musso. On July 23, 1953, respondent's attorney received a preliminary title report from another title company indicating that the property was not vested in respondent and decedent as joint tenants. The attorney telephoned to appellant and spoke with its vice-president, Hilton, informing him that the property had not been held in joint tenancy but had been held by respondent and her husband as tenants in common. It was requested that this matter be checked by appellant. Respondent's attorney also ascertained that appellant had the deed in its possession and he requested that it be forwarded to him. He received the deed and a letter from Hilton containing a handwritten notation, "erroneous, not in joint tenancy."

Hilton testified that he must have investigated after the conversation and determined that the recorded deed did not indicate that the title was in joint tenancy.

On September 16, 1953, a petition for letters testamentary for the previously administered estate was filed reciting that additional property belonging to the estate had been discovered. An order confirming sale of real property was then entered. On January 26, 1954, a supplemental petition for distribution of estate was filed, the subject matter of which was the distribution of one-half of the proceeds from the sale of the property to the Mussos.

On April 14, 1955, a written demand was made on appellant asserting a claim for the loss caused by the error in the policy. The complaint was filed on June 28, 1955. In the pretrial conference order it is stated that the parties stipulated that the pre-trial conference judge should rule on the applicability of the defense of estoppel to the first cause of action and the defense of the statute of limitations (Code Civ. Proc., § 339, subd. 1) to both causes of action. The order recites that the court ruled that the statutory period of limitations with respect to each of the two causes of action did not begin to run until respondent had notice of the error. As to estoppel the court ruled that defense "untenable."

1. The first contention of appellant is that respondent failed to comply with the terms and conditions of the policy, which failure resulted in prejudice to appellant.

Respondent's first amendment to complaint alleged "[t]hat all of the conditions of said policy were not literally complied with, in that plaintiff did not notify defendant in writing of

the existence of the error complained of when said error was discovered . . .'' but that oral notice was given four days after discovery and since appellant could have taken steps to protect its interest at that time and since appellant failed to take any action, that no prejudice resulted from the failure of literal compliance. Appellant answered that failure to give written notice ''actually prejudiced this defendant in taking any proceedings necessary to cure any alleged defect in the title. . . .''

Since the court found respondent's allegations to be true and appellant's to be untrue this first contention raises the issue of the sufficiency of the evidence to support the court's findings.

The portions of the title policy, relevant to this issue, provide:

''2. The Company at its own cost shall defend the insured in all actions or proceedings against the insured founded upon a defect, lien, encumbrance, or other matter insured against by this policy, and may pursue such litigation to final determination in the court of last resort. In case any such action or proceeding shall be begun, or in case knowledge shall come to any insured of any claim of title or interest adverse to the title as insured, or which might cause loss or damage for which the Company shall or may be liable by virtue of this policy, such insured shall at once notify the Company thereof in writing. If such notice shall not be given to the Company at least five days before the appearance day in any such action or proceeding, or if such insured shall not, in writing, promptly notify the Company of any defect, lien, encumbrance, or other matter insured against, or of any such adverse claim which shall come to the knowledge of such insured, in respect to which loss or damage is apprehended, then all liability of the Company as to each insured having such notice in regard to the subject of such action, proceeding, or claim shall cease and terminate; provided, however, that failure to so notify shall in no case prejudice the claim of any insured unless the Company shall be actually prejudiced by such failure.''

''6. A statement in writing of any loss or damage for which it is claimed the Company is liable under this policy shall be furnished to the Company within sixty days after such loss or damage shall have been ascertained. No action or proceeding for the recovery of any such loss or damage shall

be instituted or maintained against the Company until after full compliance by the insured with all the conditions imposed on the insured by this policy, nor unless commenced within twelve months after receipt by the Company of such written statement.''

Appellant bases its argument on the assumption that when there is a failure to comply with the terms of a policy there arises a presumption of prejudice. ■ *Artukovich* v. *St. Paul-Mercury Indem. Co.*, 150 Cal.App.2d 312 [310 P.2d 461] is cited wherein the court states (p. 326):

''In the absence of waiver or estoppel it is well settled that if a liability policy makes compliance with a 'Notice of Injury, Claim or Suit' provision such as that in Industrial's policy a condition precedent to liability, no recovery can be had where the provision has not been complied with if prejudice to the insurer has resulted. [Cases cited.] . . .''

■ ''Whether an insured has complied with a 'Notice of Injury, Claim or Suit' is a question of fact. [Citation.] *There is a presumption that prejudice occurred.* ■ The presumption is not a conclusive one. The burden of proving an excuse for failure to give notice of suit, and to forward the complaint, process and other suit papers to the insurer rests on the insured.'' (Emphasis added.)

■ Appellant submits that there was no evidence presented by respondent to overcome this presumption of prejudice. It also points to the testimony of its witness as to the various procedures it might have followed to clear the title as insured if notice and demand had been made as required by the policy.

Respondent answers that appellant's contention is based upon authority applicable to liability insurance and that there are clear distinctions between appellant's cases and the instant case involving title insurance. Liability insurance is defined in section 108 of the Insurance Code as including insurance against loss resulting from liability for injury to a person or resulting from liability for damage to property or property interests of others. Respondent submits that, clearly, title insurance cannot fall within this definition. (See Ins. Code, § 104.)

Respondent argues that the requirement of notice is to apprise the carrier of the occurrence of one or more of the contingencies insured against under the policy, to enable the insurer to investigate and take the necessary action. Here the occurrence or loss which is the subject of this action resulted

from appellant's own acts, and respondent submits that appellant is therefore chargeable with notice of its own acts.

At any rate, as respondent asserts, it was a question of fact as to whether or not there was prejudice from the lack of literal compliance with the notice provision. Since there was evidence of oral notice shortly after discovery of the error with oral notice thereafter and appellant neither informed respondent that such oral notice was unsatisfactory nor took any steps to correct the error, this was sufficient to support a finding of no breach which prejudiced appellant.

In *Reed* v. *Pacific Indemnity Co.*, 101 Cal.App.2d 151 [225 P.2d 255], (cited by respondent) the appellant insured a truck owned by respondents. Another company also insured the truck. After an accident the other company was notified and that company investigated and about 11 days after the accident, at the request of respondents, the investigator notified appellant by telephone and by letter of the accident. The supervisor of appellant's claim department decided that the accident was not properly reported and instructed that no one should institute an investigation. On appeal it was contended that the trial court erred in holding that the conditions of appellant's policy were not breached by respondents to the prejudice of appellants. This court held that it is settled law that the question of whether an insured has complied with notice provisions of a policy is one of fact and that before a breach precludes recovery it must appear that the insurer has suffered prejudice. The court pointed out that our Supreme Court had expressly refuted the proposition that a presumption or inference of prejudice is a conclusive one which cannot be overcome by evidence that no actual prejudice occurred. "The ultimate conclusion in each case must depend on its own facts." (*Abrams* v. *American Fidelity & Cas. Co.*, 32 Cal. 2d 233 [195 P.2d 797], discussed in *Gibson* v. *Colonial Ins. Co.*, 92 Cal.App.2d 33 [206 P.2d 387].)

In the Reed case the appellate court found that the appellant was notified of the happening of the accident and the details thereof and also of the filing of suits, but that appellant chose to rely on its claim of nonliability under the policy and refused to investigate or defend on behalf of respondents. It was held that the evidence and the law supported the finding of the trial court that the conditions of appellant's policy were not breached to the prejudice of appellant. (101 Cal. App.2d 161.)

In the instant case even if a presumption of prejudice is

applicable, since this would not seem to be the type of "adverse claim" to which the policy notice requirements were applicable and since appellant did nothing when admittedly apprised of the error shortly after its discovery, the finding of no breach to appellant's prejudice is supported by sufficient evidence. The general counsel for appellant company testified that generally, when a mistake of the company was discovered, the usual practice was to do nothing unless requested by the insured to take some action "because most of those are cured by time." ▆ It is clear that title insurance policies should be interpreted liberally in favor of the insured and against the insurer. (*J. H. Trisdale, Inc.* v. *Shasta County Title Co.*, 146 Cal.App.2d 831, 835 [304 P.2d 832]; *Overholtzer* v. *Northern Counties Title Ins. Co.*, 116 Cal.App.2d 113, 122 [253 P.2d 116].)

▆ 2. Appellant next complains that it was prejudiced by the ruling of the pretrial conference judge that the defense of estoppel was untenable. It is conceded that it was stipulated that the judge might rule on this defense. Rules of the Superior Court, rule 8.4(b), provides: "At the pre-trial conference, the parties may by stipulation also submit, and the judge may thereupon determine, any other matter which will aid in the disposition of the case."

Appellant states that the pretrial conference order was in effect a ruling as a matter of law and then cites authority for the rule that the question of whether estoppel exists is a question of fact. Since there is no record of the pretrial proceedings it cannot be determined whether this determination was one of fact or of law. ▆ At any rate "[a] valid stipulation is binding on the parties, and precludes objection to matters of procedure or evidence that have been expressly or impliedly agreed on." (46 Cal.Jur.2d, Stipulations, § 15, p. 34.) If such a stipulation is binding only on the party in whose favor the ruling is made then the purpose in authorizing such stipulations would become meaningless.

▆ 3. Appellant objects to the "ruling" of the pre-trial conference judge that the policy of title insurance was a contract of guaranty. Appellant does not indicate in what manner this ruling prejudiced it. The pretrial conference order states: "This is in effect, a contract of guaranty." The order then states that since the first cause of action was based on a contract of guaranty it was not essential for respondent to show that her husband would have left her her one-half interest in the property if he had known the real state of title.

This would not seem to be a ruling of the court but assuming it to be, no prejudicial error resulted.

Insurance Code, section 104, defines title insurance as including ". . . insurance or *guaranty* of title to real or personal property. . . ." (Emphasis added.) ■ As stated in 28 California Jurisprudence 2d, Insurance, § 525, p. 279 : "It [title insurance] ordinarily guarantees that the title to certain property as it appears from the record is vested in a named individual." (Citing *Title Ins. & Trust Co.* v. *City of Los Angeles*, 61 Cal.App. 232 [214 P. 667].) Appellant has failed to show either error or prejudice.

■ 4. Appellant also argues that the pretrial judge erred in determining that the action was not barred by the two year statute of limitations. (Code Civ. Proc., § 339, subd. 1.)

Insofar as the action on the policy of title insurance is concerned, by express provision of section 339, subdivision 1, the cause of action on such policy "shall not be deemed to have accrued until the discovery of the loss or damage suffered by the aggrieved party thereunder." The action was brought within two years after such discovery.

This conclusion makes it unnecessary to consider whether or not the cause of action for negligence was barred since the judgment finds full support in the breach of the policy of title insurance and the findings on the negligence count are not necessary to support it. (4 Cal.Jur.2d, Appeal and Error, § 531, p. 382 and cases cited in note 7.)

■ 5. Appellant's final contention concerns the testimony of respondent's son that decedent stated to him that he was going to see that respondent should never have any trouble with the estate, that the property was in joint tenancy and he was going to keep it that way. This testimony was objected to at trial.

The cases cited by appellant are not in point (*Bollinger* v. *Wright*, 143 Cal. 292, 297 [76 P. 1108] ; *Fischer* v. *Bergson*, 49 Cal. 294, 297 ; *Barcroft* v. *Livacich*, 35 Cal.App.2d 710, 718 [96 P.2d 951].) ■ These cases involved the issue of the deceased's interest in property or the issues of whether the deceased had parted with title and the courts stated the general rule that "[d]eclarations of a person, since deceased, . . . in support of his own interests, and made outside the presence of the party sought to be bound by them, are not admissible in favor of those who claim rights which the declarations would maintain." (*Barcroft* v. *Livacich, supra*, 35 Cal.App.2d 718.)

As respondent points out this testimony was not introduced and admitted to prove the truth of the contents of her husband's statements. In *Hansen* v. *Bear Film Co., Inc.,* 28 Cal.2d 154 [168 P.2d 946], the court states that "[t]he rule is succinctly stated in *Whitlow* v. *Durst, supra,* 20 Cal.2d at pp. 524-525 [127 P.2d 530]. 'When intent is a material element of a disputed fact, declarations of a decedent made after as well as before an alleged act that indicate the intent with which he performed the act are admissible in evidence as an exception to the hearsay rule, and it is immaterial that such declarations are self-serving.' "

 Since under joint tenancy the entire property would have passed to respondent and under a tenancy in common her husband's one-half interest would pass by will, decedent's intent as to what interest he desired his wife to receive would be important to indicate his reliance upon appellant's error when preparing his will. The declaration would also show his knowledge at the time of the making of the declaration of the fact that the policy recited that the property was held in joint tenancy and his reliance upon that recital of the policy.

"Since mental condition is made manifest to others by statements, declarations and conversations as well as by conduct, evidence of declarations of one since deceased, indicative of mental condition, intention, feeling, or knowledge at the time of the making of the declarations is competent and admissible when material to the issue. It is admitted to show state of mind at the time, whether the declarations are made at the time of, or before or after, the transaction in question, provided they are not too remote therefrom. Such evidence is admissible even though the declarations are self-serving." (19 Cal.Jur.2d, Evidence, § 443, p. 198.)

Judgment affirmed.

Kaufman, P. J., and Draper, J., concurred.