[Civ. No. 7258. First Appellate District, Division Two.—April 30, 1930.]

MILTON J. KOHNER et al., Plaintiffs; LURLINE KOHNER, Appellant, v. NATIONAL SURETY COMPANY (a Corporation), Respondent.

Adolph Johnson for Appellant.

Bailie, Turner & Lake and Richard A. Turner for Respondent.

BURROUGHS, J., *pro tem.*—This action was commenced by the plaintiffs to recover from the defendant the sum of $2,500 alleged to be due them upon a policy of insurance. The insurance is what is commonly called "burglary insurance."

The policy upon which this action is based recites in substance that in consideration of $52.25 premium and of the declarations thereinafter contained, which the assured warrants to be true and which are to be construed as conditions precedent, the defendant agrees to indemnify Milton J. Kohner in the sum of $5,000 for the term of twelve months, beginning on the first day of January, 1924, for all loss by burglary, theft or larceny of property insured thereunder, from within the house, building, apartment or rooms, occupied by the assured as described in the declarations and thereinafter called the premises, caused by any person except one whose property is covered thereby.

The policy then sets forth the schedule of articles insured thereunder, which included watches, necklaces, gems, precious and semi-precious stones, jewelry, articles of gold, platinum, sterling silver and other specific articles, to an amount not exceeding fifty per cent of the total amount of insurance under the policy. The house which contained the property insured is located at 208 North Beechwood Drive, Los Angeles, California. It was used as a private residence.

There is a further provision in the contract of insurance that it "applies to all property owned by the assured, or by any permanent member of the household of the assured who does not pay board or rent, or by a relative of the assured permanently residing with him, but shall not apply to such property owned by a domestic servant or other employee of the assured."

It is further provided that "The assured shall give notice of any loss hereunder so soon as practicable by telegraph to the company at its home office in New York City or to an

agent of the company and to the public police or other peace authorities having jurisdiction.''

The policy further provided that ''Affirmative proof of loss or damage under oath must be furnished to the company at its home office in New York City within sixty days from the date of the discovery of such loss or damage.''

There is no dispute in the evidence that said Milton J. Kohner and Lurline Kohner were husband and wife and, with Maxine Rose Kohner, who was treated as a member of the Kohner family, lived on the premises described in the insurance policy up to September 4, 1924. It is also an undisputed fact that Mr. Kohner supported the family during said period and for some time thereafter. On September 4, 1924, Lurline Kohner instituted divorce proceedings against her husband, Milton J. Kohner, and on said date the court issued an order restraining said Milton J. Kohner from entering the home at 208 North Beechwood Drive *pendente lite*. Mr. Kohner thereupon took up his residence in a downtown hotel. An interlocutory decree of divorce was granted in the month of August, 1925. On September 10, 1924, at about 7:45 P. M., someone knocked at the door of the Kohner home. There were then in the house Mrs. Kohner and Maxine Rose Kohner. Mrs. Kohner went to the door and inquired what was wanted. The party answered that he was a deputy sheriff and wanted to talk to her and would tell her his business when she let him in. Mrs. Kohner thereupon opened the door and the party on the outside exhibited to her a deputy sheriff's badge and together with two others forced an entrance into the house. He claimed that they were prohibition officers and had been sent out by headquarters to search the premises for liquor. Mrs. Kohner immediately denied that there was any liquor on the premises, but one of the men slapped her in the face and pushed her over to the floor and while two men held her the other man proceeded to the back of the house. Thereupon Maxine Kohner came into the room and one of the men told Mrs. Kohner to send the girl back. This Mrs. Kohner refused to do. The man let Mrs. Kohner up and placed her and Maxine on a davenport in the room. One man stayed with them while the other two went through the premises and took jewelry and diamonds belonging to Mrs. Kohner to the value of $3,100. They thereupon left

the house. Under the direction of Mrs. Kohner, Maxine Rose Kohner notified police headquarters and called up a friend and the defendant was notified at its local office. The men from police headquarters arrived in about fifteen minutes and it appears from the evidence that the bureau drawers and various places in the home had been ransacked. While it is disputed by Mrs. Kohner's testimony, there is evidence that at the time of the arrival of the police, Mrs. Kohner stated that she suspected that her husband had instigated the theft. The evidence also shows that all of the property taken by the thieves was the separate property of the plaintiff Lurline Kohner. On September 11, 1924, Sidney Gerson, an investigator for the defendant, appeared and secured a sworn statement from Mrs. Kohner of the facts and the amount of loss. The proof of loss on regular blanks furnished by the respondent company was prepared by I. R. Ruben, an attorney for Mrs. Kohner, after a communication with George W. Seith, who represented the respondent as their attorney and investigator. On September 17, 1924, this proof of loss was mailed to one John E. Mattress, who was the insurance broker who negotiated insurance for the Kohners. The evidence further discloses that on September 20, 1924, Mattress mailed this proof of loss to the defendant company at its Los Angeles office marked "Personal attention of Mr. Paine." Although Mr. Paine was not then in the employ of the respondent company, the proof of loss, together with Mr. Ruben's letter, was actually received by the respondent on September 23, 1924. Whether this proof of loss ever reached the New York city office of the respondent does not appear.

. It further appears from the testimony of Mrs. Kohner that she was advised by Gerson, the investigator of the burglary, that Mr. Kohner should also furnish proof of loss to the company. According to the testimony of Mrs. Kohner on November 1, 1924, Milton J. Kohner filled out a proof of loss in her presence. It was sworn to by him before Grace C. Newlove, a notary public, on November 1, 1924, and the witness went with her husband to the postoffice, where he mailed said proof on said day to the company at their New York office. Grace C. Newlove, the notary public, testified that on November 1, 1924, Milton J. Kohner did appear and make his affidavit to the proof of loss, but she further

positively testified that Mrs. Kohner was not with him at her office where the proof was sworn to. There was also a registry receipt received by the Kohners on November 6, 1924, for a package forwarded by registered mail to New York to the National Surety Company. Said receipt was produced at the trial by the respondent company and it had indorsed thereon with a rubber stamp, received December 5, 1924. Mr. Weil, the manager of the defendant company at its headquarters in New York, testified that this rubber stamp was placed thereon December 5, 1924, the day of its receipt at the home office; that he probably placed it there himself.

On December 20, 1924, acting under the direction of Mr. Weil, George W. Seith, the attorney for the respondent, notified Milton J. Kohner of the rejection of their claim of loss for the reason "that said claim is not covered by said policy contract and the same is hereby denied for the reason, among others that said premises described in said policy contract ceased to be your residence prior to September 10, 1924, and was not at that time your residence."

The court made a finding that on the tenth day of September, 1924, plaintiff Lurline Kohner was the owner of all the personal property which was stolen from the premises at 208 North Beechwood Drive, but neither the property nor the premises were in the possession of Milton J. Kohner. The court further found that at said time Milton J. Kohner did not maintain his household at said place and that at the time the robbery was committed the plaintiff Lurline Kohner was not a permanent or any member of the household of Milton J. Kohner. The court also found that at the time of the burglary the burglars were unknown to plaintiff Lurline Kohner and that said property was taken by theft and larceny and had a value of $3,035. The court further found that it was untrue that the persons who committed said theft were or that either of them was unknown to the plaintiff Milton J. Kohner and that it was untrue that said jewelry or any part thereof was in the possession of said plaintiff Milton J. Kohner at the time of said theft. The court further found that neither of said plaintiffs within the time provided by said policy of insurance furnished affirmative or any proof of loss or damage to the defendant under oath at his home office in New York, but such proof was

made December 5, 1924. It is further found by the court that no notice of any loss was given by plaintiffs or either of them by telegraph to the company at its home office in New York City or to any agent of the company. That within sixty days plaintiff Lurline Kohner caused to be delivered to the Los Angeles office of the defendant under oath a proof of loss, but that said proof stated that the property insured belonged at the time of the said burglary to Mrs. Lurline Kohner and that no other person had any interest therein, and that there had been no change of the occupancy of the premises of the assured since the issue of said policy and that said premises were occupied by said Lurline Kohner and Maxine Kohner and by no other person. It is further found that the loss to said plaintiff Lurline Kohner is not one for which the defendant became liable or obligated to pay under the terms of the policy.

The court entered its judgment in favor of the defendant and the plaintiff Lurline Kohner appeals.

 Many grounds are advanced by the appellant for a reversal of the judgment. It is claimed that the court erred in its finding of fact that the only affirmative proof of loss was delivered to the defendant at its home office in New York City on December 5, 1924. The evidence upon this branch of the case discloses that three forms of proof of loss were executed by the plaintiffs. The first one was executed by the plaintiff Lurline Kohner and verified by her on September 15, 1924. This proof was forwarded by the attorney for Mrs. Kohner to one L. E. Mattress, the broker who negotiated the insurance for Milton J. Kohner. L. E. Mattress was not connected with the defendant, but was an independent insurance broker. Mr. Mattress mailed this proof of loss to the National Surety Company on September 20, 1924, addressed to its Los Angeles office. This office in turn sent the same to Mr. Seith, who was an independent investigator of losses by burglary, but was also an attorney for defendant. He returned it to the Los Angeles office of the defendant and at the time of the trial it was produced in court from their files. The second proof of loss was unverified, but was signed by Milton J. Kohner and sent to the home office of the company in New York City. The proof was returned to Kohner because it was unverified. A third proof, executed and verified by Milton J. Kohner, was sent

to the company at its home office in New York city, but according to the testimony of one Bert Weil, who was the manager of the burglary proof department of the company, it was received at the home office of the company December 5, 1924. It is claimed by the appellant that this proof of loss was received by the company at its home office on November 5, 1924, and appellants produced a registry received from the company bearing that dàte. The testimony of the said Bert Weil was that this receipt was for the package containing the unverified proof of loss which they had formerly returned to Mr. Kohner. .

The evidence upon this point being in conflict, the finding of the trial court that the proof last above referred to was not received by the company at its home office until December 5, 1924, must be taken as true. The policy of insurance provides that affirmative proof of loss or damage under oath must be furnished to the company at its home office in New York City within sixty days from the date of the discovery of such loss or damage. The loss occurred September 10, 1924. No affirmative proof of loss was submitted to the company until December 5, 1924, a period of eighty-seven days. In *White* v. *Home Mutual Ins. Co.*, 128 Cal. 131 [60 Pac. 666], it is held that policy of insurance containing a clause that proof of loss must be furnished within sixty days from the date of the fire is the contract of the parties and is binding on the assured. The same rule is enunciated in *Seccombe* v. *Glens Falls Ins. Co.*, 45 Cal. App. 611 [188 Pac. 305]; *Harris* v. *North British Mercantile Ins. Co.; Ltd.*, 30 Fed. (2d) 94, and *San Francisco Savings Union* v. *Western Assur. Co., etc.*, 157 Fed. 695. ▮ It is also claimed by appellant that the respondent waived the sixty-day limitation for presenting proof of loss. We do not discover in the record any acts done by the company or its officials that amount to a waiver. Further, the plaintiffs had before them the policy of insurance which provided in unmistakable language that affirmative proof of loss must be furnished within sixty days to the company at its home office in New York City. ▮ The waiver claimed by appellant is but another term for an estoppel. (*Wheaton* v. *North British & M. Ins. Co.*, 76 Cal. 415, 419 [9 Am. St. Rep. 216, 8 Pac. 758].) To be available to a party such waiver or estoppel must be pleaded in the first instance. (*Aronson*

v. *Frankfort etc. Ins. Co.*, 9 Cal. App. 473 [99 Pac. 437];
*Schwab* v. *Bridge*, 27 Cal. App. 204 [149 Pac. 603].) Nor
can such alleged waiver be proved under the implied issues
raised by the affirmative allegations of the answer that proof
of loss had not been given. (*Goddard* v. *Fulton*, 21 Cal. 430;
*Arnold* v. *American Ins. Co.*, 148 Cal. 660, 668 [25 L. R. A.
(N. S.) 6, 84 Pac. 182]; *Bank of Anderson* v. *Home Ins. Co.*,
14 Cal. App. 208, 214 [111 Pac. 507].) The ruling by the
trial court on this question was correct.

It is also claimed that the finding of the court that
it was untrue that at the time of the theft plaintiffs main-
tained their household or that plaintiff Milton J. Kohner
did maintain his household at said 208 North Beechwood
Drive or the finding that it was untrue that at said time
plaintiff Lurline Kohner was a permanent or any member
of the household of said Milton J. Kohner is against the evi-
dence. The evidence in support of this finding is, in sub-
stance, that about September 4, 1924, plaintiffs ceased to
live together as husband and wife, the former going to a
hotel, where he lived until October 16, 1924, the wife
continuing to occupy the premises at 208 North Beechwood
Drive, which was her separate property. The wife, on
September 4, 1924, commenced an action for divorce and
obtained an injunction pending suit, restraining the de-
fendant in said action (her coplaintiff), from entering the
premises at 208 North Beechwood Drive. An interlocutory
decree of divorce was entered in said action on the eleventh
day of August, 1925, and the final decree therein was entered
October 25, 1926. The evidence shows that the plaintiff,
Milton J. Kohner, never lived at 208 North Beechwood Drive
after September 4, 1924. The policy of insurance indem-
nifies Milton J. Kohner for all loss by burglary, theft or
larceny of the property insured and those designated as
residing with him, from within the house, occupied by the
assured. It also insures the property of any permanent
member of the household of the assured, etc. It seems to
us that the questions presented are: Was Milton J. Kohner
at the time of the loss residing in the premises at 208 North
Beechwood Drive? Was Lurline Kohner a member of Mil-
ton J. Kohner's household? We are of the opinion that both
of these questions must be answered in the negative. Milton
J. Kohner was residing at a hotel. Mrs. Kohner had re-

strained him by order of a court from again entering the family residence. One of the conditions under which the insurance was accepted by the company was that the premises were occupied by the assured. In *Goldstock* v. *Fidelity & Deposit Co.*, 201 N. Y. App. Div. 816 [195 N. Y. Supp. 94], it was held that under a policy of burglary insurance, which covered property not only belonging to the assured, but to any relative of the assured permanently residing with the assured, the company was only liable for such articles as were in the possession of the members of the household of the assured while he was alive and occupied the premises, and therefore a suit by the wife to recover for goods belonging to her and which were stolen after the death of the assured was dismissed. It was also held in *Balzer* v. *Globe Indemnity Co.*, 211 App. Div. 98 [206 N. Y. Supp. 777], the policy covered only property owned by the assured or by any relative of the assured permanently residing with him. The court held the clause covered the wife ''only during the time when she answered the description of a relative of the assured permanently residing with the assured.'' It has also been held that ''A permanent abode is a home which a party may leave as interest or whim may dictate, but which he has no present intention of abandoning.'' (*Sullivan* v. *Detroit, etc.*, 135 Mich. 661 [106 Am. St. Rep. 403, 64 L. R. A. 673, 98 N. W. 756, 760].) In *McGrew* v. *Mutual Life Ins. Co.*, 132 Cal. 85 [84 Am. St. Rep. 20, 64 Pac. 103], it is held that upon a suit for divorce the presumption that the domicile of the husband is also the domicile of the wife ceases to exist and it is a matter of proof. Each may have a separate domicile.

In the case at bar there seems to be no question that at the time of the theft Mr. and Mrs. Kohner had separate domiciles and that the husband did not reside at 208 North Beechwood Drive and therefore the loss was not covered by the policy of insurance.

It is also claimed that there is no evidence to support the finding that it was untrue that the persons who committed the theft of the property were unknown to Milton J. Kohner. The contract of insurance provides that it covers all loss through the causes stated by any person except one whose property is covered by the policy. This is a condition precedent to a recovery. Under these circumstances, we can-

not say the finding was improper or not supported by the evidence. It was pleaded by plaintiffs, but not proved.

It is a further claim of error that there are not sufficient findings of fact on material issues to support the judgment. This claim seems to be predicated upon the theory that the findings of fact are mere conclusions of law. Fifteen of the findings are attacked as coming within this class. As it would unnecessarily lengthen this opinion to discuss each one separately, we will examine the first alleged error; a decision of this one is sufficient to cover all of said objections. The court found: "That it is untrue that on the tenth day of September, 1924, or at any time the acts complained of in the complaint herein were committed, plaintiffs herein maintained their household or that plaintiff herein, Milton J. Kohner, did maintain his household at said 208 North Beechwood drive, Los Angeles, California." This finding responds to an allegation of the complaint, "That on or about said tenth day of September, 1924, and while plaintiffs herein did maintain their household at said 208 N. Beechwood drive, said city of Los Angeles. . . . " It is held in *Dam* v. *Zink*, 112 Cal. 91 [44 Pac. 331], "The only purpose of the findings is to answer the questions put by the pleadings, and if facts are stated in the findings in the same way in which they are stated in the pleadings, they are sufficient." In *McCarthy* v. *Brown*, 113 Cal. 15 [45 Pac. 14], it is said, the "findings should state the ultimate facts pleaded and not probative facts." The following cases give illustrations of what constitute findings of fact: *Weidenmueller* v. *Sterns etc. Co.*, 128 Cal. 623 [61 Pac. 374]; *Levins* v. *Rovegno*, 71 Cal. 275 [12 Pac. 161]; *Hollenbach* v. *Schnabel*, 101 Cal. 317 [40 Am. St. Rep. 57, 35 Pac. 872]. It is necessary for the court to state certain facts as a reason for finding the issue. (*Dam* v. *Zink, supra.*) In *Butler* v. *Agnew*, 9 Cal. App. 327, 330 [99 Pac. 395], it is held that in case of a doubt as to which class the findings belong, the doubt should be resolved in favor of the judgment. We are satisfied that the findings are sufficient.

It is another claim of appellant that the court failed to find upon material issues. Under this particular branch of the case, it seems to be appellant's contention that the court should state the probative facts and find whether or

not they are true. The authorities last cited answer this claim in the negative.

The judgment herein should be affirmed. It is so ordered.

Nourse, P. J., and Sturtevant, J., concurred.