[Civ. No. 19723. First Dist., Div. One. Apr. 23, 1962.]

H. WESLEY JOYCE, Plaintiff and Respondent, v. UNITED INSURANCE COMPANY OF AMERICA, Defendant and Appellant.

Norman S. Menifee for Defendant and Appellant.

Elton F. Martin for Plaintiff and Respondent.

SULLIVAN, J.—In this action brought by a policyholder to recover benefits claimed under two policies of disability insurance, the defendant insurance company, hereafter referred to as United appeals from a judgment, after a nonjury trial, in favor of the plaintiff policyholder in the sum of $4,400.

The two policies, bearing consecutive numbers, are identical in their terms, have the same policy date of November 14, 1957, and provide for a first annual premium of $85. They were issued on separate applications of the plaintiff on printed forms of United, each dated October 30, 1957. So far as pertinent here, United, according to the insuring clause of each policy, insured the plaintiff "against loss of . . . time, resulting directly and independently of all other causes from accidental bodily injury received while this policy is in force; . . ." Each of the subject policies also contains the following provision, found under the caption "Total Disability Accident Benefits for Life": "The Company will pay at the rate of One Hundred ($100.00) Dollars per month for one day or more from the date of the first medical treatment and so long as the Insured lives and is disabled, if such injury shall within twenty days from date of accident wholly and continuously disable the Insured, cause total loss of time and require regular attendance by a licensed physician, surgeon, osteopath or chiropractor other than the Insured."

The plaintiff was employed as a mechanical technician or tool maker at the Stanford University Electronics Laboratory. On December 12, 1957, while moving a heavy duty foot shear at his place of employment, he injured his right shoulder. He nevertheless continued working at his customary job. On January 10, 1958, at his same place of employment, the plaintiff injured his right arm while manipulating a heavy duty vise. He left work and finding that his arm continued to bother him over the weekend (the accident occurred on Friday), he secured medical attention on the following Monday, January 13, 1958. From that date until the trial of the case on January 20, 1960, plaintiff did not return to work except for two short periods of time which will be discussed later.

On January 16, 1958, the plaintiff wrote a letter to United, addressed to the latter's office in San Francisco, referring to his two policies by number, and stating, "I wish to file a claim, due to accidental injury of my right arm which has kept me from work the past week and may continue to do so for a while longer." No date of the accidental injury was given. United

sent him a printed claim form which he filled out and returned. Although dated January 30, 1958, it bore United's receipt stamp dated February 6, 1958. The printed questions on this form were answered in such a way as to show that the accident occurred on December 12, 1957, and the date he "quit work because of this . . . injury" was January 10, 1958. United replied by letter of March 3, 1958, informing the plaintiff that because of the date of the injury and the termination of the work shown, he was not covered by the policy, since the injury did not cause total and continuous disability within 20 days, as provided by the terms of the policy we have hereinabove set forth. The plaintiff promptly replied by letter of March 4, 1958, complaining of United's position in the matter, objecting to their statement that he had not been disabled until more than 20 days after the accident, and advising that "[m]y claim is legal and I intend to carry it further. . . ." The letter failed to mention anything about the accident having occurred on January 10, 1958. On March 13, 1958, United wrote back, stating that in view of the fact that the reports from plaintiff, his doctor and his employer showed the injury to be on December 12, 1957, United could not approve payment. However, United advised plaintiff that if it had been misinformed, it should be furnished with a corrected statement.

The next communication came from plaintiff's attorneys who wrote United on August 5, 1958, demanding payment of benefits due from January 13, 1958. No date of accident was mentioned. United replied on August 7, 1958, restating its position. Plaintiff's attorneys then wrote United on August 19, 1958, advising the company that it was in error, that it was true that plaintiff hurt his right arm on December 12, 1957, "but he did not suffer an injury which disabled him until January 10, 1958, when he suffered a tearing of the muscle attachment . . . of the right humerus. . . ."

Thus the heart of the controversy between the parties was in the court below, as it is here, the actual date of the disabling injury and the sufficiency and timeliness of the notice of plaintiff's claim. United's position was that the injury occurring on December 12, 1957, was the only one suffered by plaintiff and that such injury was not within the coverage of the policy since plaintiff was not wholly and continuously disabled within 20 days of such date, his disability not having commenced until January 10, 1958. The plaintiff's position was that he sustained a second injury on January 10, 1958,

and being thereby immediately disabled, was within the said 20-day period.

At the trial, the plaintiff was the only witness, although both parties introduced documentary evidence. The court found, so far as is pertinent to this appeal, that the plaintiff on January 10, 1958, suffered an accidental injury to his right arm when he pulled at a vise, that such injury proximately caused total disability from the date thereof until the trial, total loss of time and the need for medical care, and that the plaintiff sustained a sprain of the muscle of his shoulder and chest on December 12, 1957, which was a remote cause, if any, of his loss of time and did not cause disability or loss of time. The court concluded that the above injury and disability of January 10th was within the coverage of the policies, and that plaintiff had given timely notice of his claim, and gave judgment accordingly.

United contends before us that (1) the injury sustained by plaintiff does not come within the provisions of the policies; (2) the plaintiff failed to give notice of his claim as required by the policies; (3) there was a termination of disability upon plaintiff's return to work; and (4) if any coverage existed, it was limited because of the fact that the policies were issued on a budget plan.

*Accidental Bodily Injury within Policy Provisions.*

United contends that all the evidence shows plaintiff's injury to have resulted from the accident of December 12, 1957. In short, it attacks the sufficiency of the evidence to support the court's finding that an accident and resultant injury occurred on January 10, 1958, proximately causing the plaintiff's disability and loss of time.

The above argument is predicated on two groups of documentary evidence: (a) The above-mentioned correspondence between plaintiff and United in the early part of 1958, including the claim form signed by plaintiff, giving December 12, 1957, as the date of accident; and (b) certain records of proceedings and medical reports before the Industrial Accident Commission.

Plaintiff himself testified that he had an accident and sustained an injury on January 10, 1958. He explained (although not too clearly in the record) that in filling out the claim form, he thought he was giving January 10, 1958, as the date of his injury when he inserted it as the date he quit work because of injury. The record shows that he had two

accidents—one on December 12, 1957, in moving a shear, and another on January 10, 1958, in working a vise. Although United refers us to a number of medical reports found in the record of the Industrial Accident Commission proceedings which give December 12, 1957, as the date of injury, there is also some medical evidence in such proceedings giving January 10, 1958, as the date of plaintiff's injury.[1]

The above evidence, including plaintiff's own testimony is sufficient to sustain the trial court's findings that there was an accident and injury on January 10th which was the proximate cause of plaintiff's disability. All of the documentary evidence to which appellant has referred us merely created a conflict in the evidence which was resolved by the court below. The determination of such factual conflicts was within the exclusive province of the trial court. (*Berniker* v. *Berniker* (1947) 30 Cal.2d 439, 444 [182 P.2d 557] ; *Kuhn* v. *Gottfried* (1951) 103 Cal.App.2d 80, 84 [229 P.2d 137].)

*Notice of Claim.*

Each of the policies contains the following provision: "Notice of Claim: Written notice of claim must be given to the Company *within twenty days after the occurrence or commencement of any loss* covered by the policy, or *as soon thereafter as is reasonably possible.* Notice given by or on behalf of the Insured or the beneficiary to the Company . . . with information sufficient to identify the Insured, shall be deemed notice to the Company." (Emphasis added.)

United argues that since the first notice of any kind was plaintiff's letter of January 16, 1958, followed by his written claim of January 30, 1958, designating the date of his accident as December 12, 1957, a 20-day notice was not given in accordance with the above policy provision. Additionally, United argues that since plaintiff did not give any notice of an injury on January 10, 1958, until his attorneys wrote United on August 19, 1958, such notice was far beyond the time prescribed in the above policy provision.

The trial court made detailed findings both as to the notice given United by plaintiff[2] and the notice given by plaintiff's

_____

[1]Plaintiff filed two applications before the commission, one relating to the accident of December 12th and one to the accident of January 10th. The proceedings were had under the latter, in which the application stated that "while straining to tighten steel in bench vise muscle pulled apart. . . ." Two medical reports confirm this.

[2]Finding X states: "That on January 13, 1958, plaintiff notified defendant by letter of his claim under the policies for disability pay-

attorneys[3] and from such findings concluded that the "plaintiff gave defendant timely notice of his claim and defendant had ample opportunity to investigate all the facts [and] [t]hat defendant by its failure to make objections waived any defects in the notice given by plaintiff." The court also concluded "[t]hat defendant's contention as to timeliness of notice is not material as a matter of law since no prejudice is shown."

Appellant's contentions must be considered against the background of these findings and conclusions. The basis of its argument is that the notice of claim under the policy provision above mentioned must be given within 20 days from the occurrence of the *accident* or *injury*. A reference to the provision shows no such statement. It states that written notice of claim must be given "within twenty days after the occurrence or commencement of any *loss* covered by the policy, or *as soon thereafter* as is reasonably possible." (Emphasis added.) Although we do not think, as we shall hereafter explain, that the above policy provision requires notice within 20 days in order to recover under the policy, nevertheless it does appear, as the court found, that the plaintiff notified United of his loss on January 16, 1958, six days after the loss commenced. (As noted *supra,* the date used in the finding was January 13th.) In his letter of that date he stated "I wish to file a claim, due to accidental injury of my right arm which has kept me from work *the past week. . . .*" (Emphasis added.)

It is true that when plaintiff filled out and returned the

---

ments; that on January 19, 1958, plaintiff mailed to defendant the completed claim form consisting of one printed sheet that defendant had sent him. Plaintiff indicated on this claim form that January 10, 1958 was the day his disability occurred. The form provided no space for reporting two accidents and the defendant had provided only one printed form to fill out. No objection was made by defendant as to any defect in this notice until the pretrial conference of this action." (Obviously the date January 13, should be January 16.) The court's finding contained in the last sentence is not supported by the record, but does not affect our disposition of the appeal. The record shows that United raised the issue of the timeliness of the notice of claim by its answer to plaintiff's first amended complaint, which sought recovery on the theory of timely notice, not on the theory that timely notice had been waived. Plaintiff did not allege waiver or facts showing waiver, which being another term for estoppel must be pleaded in the first instance. (*Kohner* v. *National Surety Co.* (1930) 105 Cal.App. 430, 437 [287 P. 510].)

[3]Finding XI states: "That in August, 1958, plaintiff through his attorney notified defendant in writing that the injury of January 10, 1958 was the cause of his disability and basis of his claim for benefits under the policies. No evidence was presented showing that defendant was prejudiced in any way by delay or otherwise with respect to these notices."

claim form sent him by United in response to the above letter, he mistakenly thought that he was giving January 10, 1958, as the date of his second accident but returned a form which designated December 12, 1957 (his first accident) as the date of accident. As a result United thought that the plaintiff was not totally disabled within 20 days[4] of the date of accident and that his claim was therefore not within the terms of the policy. The trial court found, on substantial evidence as we have pointed out, that plaintiff did suffer an accidental bodily injury on January 10, 1958, while pulling on a vise and that "immediately from date of injury on January 10, 1958," he became totally disabled. This date was the "commencement of . . . loss covered by the policy" and plaintiff by his letter of January 16 *in fact* notified United of his claim, even though because of the way plaintiff filled out the claim form, United received the impression that plaintiff's claim was not for a loss covered by the policy.

We think, however, the conclusion that plaintiff gave timely notice of his claim is supportable on a broader ground. ■ The above clause about which the controversy revolves is one (Form A) of two compulsory standard provisions of notice of claim prescribed for disability policies by section 10350.5 of the Insurance Code as part of a statutory mandate (Ins. Code, § 10350) that, with exceptions noted "each disability policy delivered or issued for delivery to any person in this State shall contain the provisions specified in Sections 10350.1 to 10350.12, inclusive, in the words in which the same appear in such sections; . . ." All of the foregoing sections are found within article 4A of chapter 4 (Standard Provisions in Disability Policies §§ 10270-10401) of part 2 (Life and Disability Insurance) of the Insurance Code. Article 4A was added to the code in 1951 (Stats. 1951, ch. 570, § 11, p. 1724). Appellant has not furnished, nor has our independent research disclosed, any case construing the above compulsory standard provision.

Nevertheless we do not think it prescribes a 20-day period as a contractual absolute. On the contrary, the provision is phrased in the alternative. In our view, it means that notice of claim may be given after the 20-day period if given "as soon . . . as is reasonably possible." However construed, it is

---

[4]This refers to the time period set forth in the provision entitled "Total Disability Accident Benefits for Life" quoted by us *supra,* and not to the time period in the notice of claim provision.

also clear that no other language in the policy makes compliance with the above provision a condition precedent to recovery or imposes a forfeiture, in the event that notice is not given within 20 days.

 Where a policy of insurance provides for the giving of notice of claim "as soon as practicable," "promptly," "immediately" or in similar language, failure to give, or delay in giving, the required notice is not fatal to recovery under the policy, unless the insurer has been prejudiced by such failure or delay. (*Abrams* v. *American Fidelity & Cas. Co.* (1948) 32 Cal.2d 233, 239 [195 P.2d 797]; *Security Ins. Co.* v. *Snyder-Lynch Motors* (1960) 183 Cal.App.2d 574, 580 [7 Cal.Rptr. 28]; *Walters* v. *American Ins. Co.* (1960) 185 Cal.App.2d 776, 787 [8 Cal.Rptr. 665]; *Hall* v. *San Jose Abstract & Title Ins. Co.* (1959) 172 Cal.App.2d 421, 426-428 [342 P.2d 362]; *Employers etc. Ins. Co.* v. *Pacific Indem. Co.* (1959) 167 Cal.App.2d 369, 382 [334 P.2d 659]; *Artukovich* v. *St. Paul-Mercury Indem. Co.* (1959) 150 Cal.App.2d 312, 326 [310 P.2d 461]; *Reed* v. *Pacific Indem. Co.* (1950) 101 Cal.App.2d 151, 159-161 [225 P.2d 255]; *Gibson* v. *Colonial Ins. Co.* (1949) 92 Cal.App.2d 33, 34-37 [206 P.2d 387].) Where no prejudice results to the insurer, the above rule is applicable, even though compliance with the notice provisions is made a condition of the policy or specified as a condition precedent to the liability of the insurer. (See for example *Security Ins. Co.* v. *Snyder-Lynch Motors, supra*; *Walters* v. *American Ins. Co., supra*; *Hall* v. *San Jose Abstract & Title Ins. Co., supra*; *Gibson* v. *Colonial Ins. Co., supra*.) Under the above authorities, provisions requiring notice "as soon as practicable," "promptly" or "immediately" have generally been construed in the language of the *Gibson* case, *supra,* "as merely requiring notice which is prompt and reasonable under the circumstances. . . ." (92 Cal.App.2d at p. 36.) It is a question of fact whether an insured has failed to comply with the notice provisions of his policy and whether such failure has resulted in prejudice to the insurer. (*Reed* v. *Pacific Indem. Co.* (1950) 101 Cal. App.2d 151, 159 [225 P.2d 255].) Findings, supported by the evidence, that no prejudice is shown, will be upheld on appeal. (See for example *Walters* v. *American Ins. Co., supra,* 185 Cal.App.2d 776, 787; *Employers etc. Ins. Co.* v. *Pacific Indem. Co., supra,* 167 Cal.App.2d 369, 382.)

We think the above cases are applicable to the problem

at hand.[5] Assuming for the sake of argument that the plaintiff failed to comply with the pertinent notice of claim provision because he failed to advise United of the date of the second accident (January 10, 1958) until he did so through his attorneys on August 19, 1958, nevertheless the trial court found that no evidence was presented showing that United was prejudiced by delay or otherwise, and concluded that United was given timely notice of plaintiff's claim and had ample opportunity to investigate all the facts. These findings and conclusions are supported by the record. Although there was, under our present assumption, a delay of a little over seven months, mere delay does not constitute prejudice as a matter of law. (See *Gibson* v. *Colonial Ins. Co., supra,* 92 Cal.App.2d 33, 36-37.) The second injury of January 10th occurred at plaintiff's same place of employment and during the course of his employment. The trial court could have reasonably inferred that United had the same opportunity at the end of said period of time to ascertain from the employer and fellow employees whether such injury did occur on said date. There was also available to United ample evidence, including medical reports, in the various proceedings had before the Industrial Accident Commission. United did not introduce any evidence showing that it was prejudiced by a lack of opportunity to investigate or in any other way. We cannot say that the record before us shows prejudice as a matter of law.

*Effect of Plaintiff's Return to Work.*

The uncontradicted evidence in the record shows that the plaintiff returned to work from June 1, 1958, until June 18, 1958, and again from August 26, 1958, until October 1, 1958. With respect to the first occasion, he testified ". . . I couldn't make it, I couldn't handle the job, I couldn't perform the usual duties required. . . . I couldn't work for more than about three or four minutes at a time using my right hand. . . ." On the second occasion he returned because of economic necessity, was met with similar experiences when he

---

[5]Appellant's opening brief (no closing brief was filed) cites no authorities pertinent to the problem. On oral argument appellant cited in support of its position *Purefoy* v. *Pacific Automobile Indem. Exch.* (1935) 5 Cal.2d 81 [53 P.2d 155]; *Arthur* v. *London Guar. & Acc. Co.* (1947) 78 Cal.App.2d 198 [177 P.2d 625]; and *Distributors Packing Co.* v. *Pacific Indem. Co.* (1937) 21 Cal.App.2d 505 [70 P.2d 253]. All of these three cases, however, are considered and distinguished in *Abrams* v. *American Fidelity & Cas. Co., supra,* 32 Cal.2d 233, 238-239.

"went back on regular projects," and was finally released. As we have pointed out, the court found that he was wholly and continuously disabled from the time of injury to the date of trial. In addition the court found that he made futile attempts to resume his occupation but could not do the precision work required of his occupation and terminated his work because he could not perform his duties.

Defendant contends that plaintiff's disability was terminated when he returned to work on June 1, 1958. Stated another way, it argues that the finding that plaintiff was wholly and continuously disabled until the trial is without support in the evidence. The contention is without merit.

The policy here under consideration is one which insures against general or nonoccupational disability as distinguished from one providing benefits for occupational disability. It does not insure the plaintiff in respect to any particular occupation. The general or total disability which it insures against is akin to, though not as binding on the insured as, provisions defining total disability as that which prevents the insured "from engaging in any occupation, or performing any work whatsoever for remuneration or profit." (Cf. *Erreca* v. *Western States Life Ins. Co., infra*; *Culley* v. *New York Life Ins. Co., infra.*) It is settled in California that total disability within the meaning of the provisions pertinent in the *Erreca* and *Culley* cases, and, in our view, within the provision in the policy before us, is a disability which prevents the insured from "working with reasonable continuity in his customary occupation or in any other occupation in which he might reasonably be expected to engage in view of his station and physical and mental capacity." (*Hurwit* v. *Prudential Ins. Co. of America* (1941) 45 Cal.App.2d 74, 81 [113 P.2d 691]; *Erreca* v. *Western States Life Ins. Co.* (1942) 19 Cal.2d 388, 394-395 [121 P.2d 689, 141 A.L.R. 68]; *Culley* v. *New York Life Ins. Co.* (1945) 27 Cal.2d 187, 191 [163 P.2d 698].) ▆▆ As stated in the *Erreca* case, *supra*, "[a]ccording to overwhelming authority, the term 'total disability' does not signify an absolute state of helplessness but means such a disability as renders the insured unable to perform the substantial and material acts necessary to the prosecution of a business or occupation in the usual or customary way. Recovery is not precluded under a total disability provision because the insured is able to perform sporadic tasks, or give attention to simple or inconsequential details incident to the conduct of business [citations]." (19 Cal.2d at p. 396.) (See

also *Fitzgerald* v. *Globe Indem. Co. of New York* (1927) 84 Cal.App. 689, 697 [258 P. 458] ; 29A Am.Jur., *Insurance,* § 1520, pp. 625-626 ; 28 Cal.Jur.2d, *Insurance,* § 559, pp. 316-320.)

▇ In determining whether there has been total disability, "the test of disability is not what the insured actually did in the effort to perform his duties, but what, in the exercise of due prudence he was reasonably able to do. This was a question of fact on which the trial court's determination, in so far as founded on any substantial evidence, is binding upon us." (*Wright* v. *Prudential Ins. Co.* (1938) 27 Cal. App.2d 195, 216 [80 P.2d 752].) (See also *Trousdell* v. *Equitable Life Assur. Soc.* (1942) 55 Cal.App.2d 74, 82-83 [130 P.2d 173, 990] ; *Fitzgerald* v. *Globe Indem. Co. of New York, supra,* 84 Cal.App. 689, 697.)

▇ Contrary to appellant's contention, therefore, a finding that the plaintiff was "wholly and continuously disabled" is not precluded by the fact that he made two futile attempts to return to his job. Such finding must be upheld since the evidence shows that on each occasion of his return to work, he was unable to perform the duties of his occupation or any other occupation in which he might reasonably be expected to engage. From the evidence that the plaintiff was physically unable to perform his regular duties, that his attempts to resume work were of short duration, and that all during such time he was under the care of doctors, the trial court could have well inferred that in the light of common care and prudence, plaintiff should not have returned to work.

The cases of *Sanborn* v. *Pacific Mut. Life Ins. Co.* (1940) 42 Cal.App.2d 99 [108 P.2d 458], *Martin* v. *Postal Union Life Ins. Co.* (1939) 31 Cal.App.2d 329 [87 P.2d 897], and *Dietlin* v. *General American Life Ins. Co.* (1935) 4 Cal.2d 336 [49 P.2d 590], relied upon by appellant, are of no assistance to it here. In *Sanborn,* the insured, a lawyer, had been disabled, had returned to his practice, and becoming disabled again, attempted to show such latter disability was a continuance of his original disability. The trial court found, that between the dates when he returned to work, he was under no disability, since he was able to employ all his time in the practice of his profession, and that therefore his second illness was a new disability, not the continuance of an old one. The appellate court merely upheld this finding.

Nor do the *Martin* and *Dietlin* cases announce the rule of

law urged by appellant. In *Martin*, involving a stringent policy provision defining total disability as that wholly preventing the insured "from performing each and every duty pertaining to his occupation and from attending to any business or any occupation whatsoever" (p. 331), the appellate court modified a judgment in favor of the insured, because the undisputed evidence showed that during a part of the period involved, he was actively engaged in an occupation. In *Dietlin*, the appellate court again merely refused to disturb the conclusion of the trial court, based on conflicting evidence, that the insured was not totally disabled after a certain date.

None of the foregoing three cases, therefore, announce a rule of law that return to work per se terminates disability. ▮ All of them recognize the principle, heretofore set forth by us, that the determination of disability is a question of fact.

### Limitation of Coverage.

Finally, it is the contention of United that, since the plaintiff never paid the full premiums on the policies, the coverage should be limited thereunder.

The policies provide for an annual premium of $85, or the payment in advance of $29.50 with the balance of $55.50 payable within 90 days of the policy date (November 14, 1957). The plaintiff testified that he paid $85 for both policies and was told by United's agent that he was covered for six months on each, the sum of $42.50 being applied to each. He further stated that when he signed the applications, only the figures $42.50 appeared at the bottom in a box containing the legend "Paid" and "Balance." The applications, received in evidence, state at the bottom: "Total Cost Payable In Advance $85.00 or $29.50 with application and Balance payable: $18.50 in thirty days, $18.50 in sixty days, $18.50 in ninety days. . . ." On one application, in the box provided with the legend "Paid" and "Balance," $42.50 is written after both "Paid" and "Balance." Both are then crossed out, and $29.50 is written over "Paid" and $55.50 over "Balance." The same appears to be done on the second application, except that the $42.50 opposite "Balance" is not crossed out.

Plaintiff testified that the figures "$29.50" and "$55.50" were not on the applications when he signed them. He later received the policies and, after them, the applications (presumably copies). He read the policies but "didn't even notice them [the applications] at the time."

The policies also provide: "If the full amount of the first annual premium is not paid within the specified time, this policy shall terminate at noon of the first day of the fourth month following the Policy Date, subject to a grace period of thirty-one days within which to make said payment of Fifty-five and 50/100 ($55.50) Dollars, during which grace period the policy will continue in force."

The trial court found that defendant's agent assured plaintiff that his payment of $42.50 on each policy would insure him for six months, and that the balance of the annual premium would be due at the end of six months. The court also found that under the policy provision which we have set forth immediately above, each of the policies was in force on January 10, 1958, when the plaintiff received the injury which disabled him[6] and concluded that the defendant was estopped to deny the policies were in force on January 10, 1958, that, as an independent conclusion, they were then in force, and that defendant's liability thereunder could not subsequently be terminated for failure to pay balance of premiums.

Although the finding of estoppel has evidentiary support in the record, we deem it unnecessary to determine whether the judgment can be upheld on such ground. It is clear that liability attached while the policies were in force. The evidence shows that the plaintiff paid $42.50 on each policy, more than sufficient to cover the down payment. The provisions relating to termination for nonpayment of balance of premium which we have already set forth, also clearly establish that any termination date, thus calculated,[7] occurred considerably after January 1958. ▊▊▊ Termination of the policies for nonpayment of the balance of the annual premium cannot operate as a condition subsequent to terminate liability attaching while the policies were in force. The policies do not so provide. Indeed, any such provision would be void as contrary to law. (Ins. Code, § 10291.5, subd. (b)(4).)

The judgment is affirmed.

Bray, P. J., and Tobriner, J., concurred.

---

[6]It is not clear to us how the trial court calculated the specific duration of the policies under the above provision, but we are convinced that no matter how the period is measured, January 10, 1958, falls within it.

[7]Each policy terminates on the first day of the fourth month following the policy date of November 14, 1957, which, without considering the grace period, would be March 1, 1958.