Filed 3/29/22  P. v. Garcia CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ANGEL GARCIA,<br><br>    Defendant and Appellant. | G060335<br><br>(Super. Ct. No. 08ZF0020)<br><br>O P I N I O N |

\*          \*          \*

Appeal from a judgment of the Superior Court of Orange County, Sheila F. Hanson, Judge.  Affirmed and remanded with directions.

Aurora Elizabeth Bewicke, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Arlene A. Sevidal, Acting Assistant Attorney General, Charles C. Ragland and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

In 2009, a jury convicted defendant Angel Garcia of two counts of murder, one count of attempted murder, and one count of active gang participation. In 2019, Garcia filed a Penal Code section 1170.95 petition to vacate his murder convictions.[1] The trial court denied the petition at the prima facie stage. Garcia filed an appeal.

Effective January 1, 2022: "A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, [or] attempted murder under the natural and probable consequences doctrine . . . may file a petition with the court . . . to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced . . . ." (§ 1170.95, subd. (a).)

During Garcia's trial, the court did not instruct the jury on the felony-murder rule or the natural and probable consequences doctrine. Based on the jury instructions, the jury convicted Garcia of two counts of premeditated murder, finding Garcia to be either the actual killer, or a direct aider and abettor acting with express malice.

Thus, we affirm the trial court's denial of Garcia's section 1170.95 petition at the prima facie stage as to the two murder convictions.

As to Garcia's attempted murder conviction, this issue has arisen for the first time on appeal because of an amendment to section 1170.95 that recently became effective. The amendment is ameliorative in nature, and therefore applies retroactively. (See *In re Estrada* (1965) 63 Cal.2d 740, 744-745.)

Thus, we are remanding the matter to the trial court to consider Garcia's attempted murder conviction in the first instance (at the prima facie stage). (See *Sanborn v. Pacific Mutual Life Ins. Co*. (1940) 42 Cal.App.2d 99, 104-105 ["An appellate court is

---

[1] Further undesignated statutory references are to the Penal Code.

a reviewing court, and . . . not a trial court or court of first instance"].)

## I

## FACTS AND PROCEDURAL BACKGROUND

"In the late afternoon of December 17, 2006, 16-year-old Fernando Garcia, 14-year-old Angel Secundino, 14-year-old Gabriel Perez and 13-year-old Vanessa Diaz were at Fernando's house drinking and smoking marijuana. At about 4:30 p.m., they walked down an alley to pick up Fernando's little brother who was with a babysitter. None of the four had any weapons. Fernando was a member of the Lopers, a criminal street gang. Both Secundino and Perez 'hung around Lopers, but were not officially initiated into the gang.' The alley where they were walking was nearby but not within the territory of the Lopers gang.

"As the four walked, a black Chrysler 300 approached them. Fernando described what happened next: 'The car stopped and two guys got out from the passenger seat and the backseat of the car and they approached us. And they—we were arguing and then I was the first one to get shot so I don't remember. When I woke up, I saw my two friends laying down. They were already dead.'

"Later, Fernando told investigators those in the car said 'we're from Walnut,' and someone from his group responded, 'this is Lopers.' Immediately thereafter, the shooting started.

"Fernando knew defendant by the name of Mono. He said he was one of the shooters.

"Diaz recognized the person in the front passenger seat as 'Mono from Walnut,' another street gang. She saw Mono shoot Perez in the head. During the trial, Diaz identified defendant as the person she knew as Mono.

3

"During the shootings, a 'bullet came out of Gabriel's head and struck' Diaz, and she 'blacked out.' When she got up, she saw Perez 'bleeding from his ears. His brains were coming out.' She ran to call an ambulance.

"Jose Luis Cervantes, who 'shared a cell' with defendant at the Theo Lacy Facility for three weeks, saw defendant writing the name Mono a couple of times. Defendant told Cervantes he was an active member of the Walnut Street gang, and that he 'would go around promoting his gang.' Defendant also told Cervantes about an incident 'where he told me that he had a gun and he shot towards some people.'" (*People v. Garcia* (Oct. 4, 2010, G042130) [nonpub. opn.] (*Garcia I*).)

In 2009, a jury convicted Garcia of two counts of murder, one count of attempted murder, and one count of active gang participation. The jury found true two related first degree, special circumstance, gang, and firearm allegations.

This court affirmed the judgment on direct appeal, with directions to correct the minute order. (*Garcia I*, *supra*, G042130.)


*Section 1170.95 Petition*

In 2019, Garcia filed a section 1170.95 petition. The trial court appointed counsel. The district attorney filed an opposition.

In 2021, the trial court conducted a hearing. The court stated:

"I have had an opportunity to review the petition, the people's opposition. I have also reviewed the appellate opinion on direct appeal, as well as the jury instructions provided to the jury in the underlying action and the jury verdicts and findings.

"Based upon that, it is the court's tentative decision to deny the petition as a prima facie case because reviewing those matters it's clear to the court that Mr. Garcia was found guilty of two counts of first degree murder, as well as one count of attempted murder. He was found to be the actual shooter, and the jury was not instructed on felony

4

murder or natural and probable consequences.

"The only way in which he could have been found guilty of first degree murder was based upon premeditation and deliberation. That was the only instructions the jurors were provided, and based upon that, the court's tentative is to deny on the grounds he does not qualify for a relief under 1170.95."

The parties submitted without further argument, and the trial court formally denied the section 1170.95 petition.

II

DISCUSSION

Garcia argues the trial court improperly denied his petition at the prima facie stage after reviewing the underlying record of conviction and finding he was precluded from relief as a matter of law. "This is a purely legal conclusion, which we review de novo." (See *People v. Murillo* (2020) 54 Cal.App.5th 160, 167.)

In the remainder of this discussion, we will: A) review applicable principles of law; B) summarize the relevant portions of Garcia's record of conviction; and C) analyze the law as applied to the relevant facts.

A. *Applicable Principles of Law*

Generally, a person may be liable for a crime as a direct perpetrator or as an aider and abettor. (§ 31.) An aider and abettor can be held liable for crimes that were intentionally aided and abetted (target offenses); an aider and abettor could also be held liable for any crimes that were not intended but were reasonably foreseeable (nontarget offenses). (*People v. Laster* (1997) 52 Cal.App.4th 1450, 1462-1463.) Liability for intentional, target offenses is known as "direct" aider and abettor liability; liability for unintentional, nontarget offenses is known as the ""'natural and probable consequences"

5

doctrine.'"  (*People v. Montes* (1999) 74 Cal.App.4th 1050, 1055.)

Effective January 1, 2019, the Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life."  (Stats. 2018, ch. 1015, § 1, subd. (f).)  "Through the passage of Senate Bill 1437 the Legislature effectively eliminated the natural and probable consequences doctrine as it relates to murder convictions, and reduced the scope of the felony-murder rule."  (*People v. Prado* (2020) 49 Cal.App.5th 480, 487.)

Although an accomplice can no longer be convicted of murder under the natural and probable consequences theory, an accomplice can still be convicted of murder as a direct aider and abettor.  (§§ 188, 189.)  "One who directly aids and abets another who commits murder is thus liable for murder under the new law just as he or she was liable under the old law."  (*People v. Offley* (2020) 48 Cal.App.5th 588, 595-596.)

Under a direct aider and abettor liability theory, the prosecution must prove the person who is not the actual killer "engaged in the requisite acts and had the requisite intent" to aid and abet the target crime of murder.  (See *People v. Duchine (*2021) 60 Cal.App.5th 798, 815.)  A direct aider and abettor's "guilt is based on a combination of the direct perpetrator's acts and the aider and abettor's *own* acts and *own* mental state."  (*People v. McCoy* (2001) 25 Cal.4th 1111, 1116-1117.)

In 2019, the Legislature also enacted section 1170.95, which allowed a person convicted of murder (and now attempted murder and manslaughter) under a no longer valid legal theory to file a petition for vacatur and resentencing.  If the court determines the petitioner has made a prima facie showing, the court must issue an OSC.  (§ 1170.95, subd. (c).)  If the parties do not stipulate the petitioner is entitled to relief, the

6

court must hold an evidentiary hearing. If the prosecution fails to prove petitioner's ineligibility for relief beyond a reasonable doubt, the court must vacate petitioner's invalid conviction and resentence the petitioner accordingly. (§ 1170.95, subd. (d)(3).)

"The record of conviction will necessarily inform the trial court's prima facie inquiry . . . , allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*People v. Lewis* (2021) 11 Cal.5th 952, 971.) Generally, the record of conviction may include closing arguments, jury instructions, verdict forms, and prior appellate opinions in the case. (*Id.* at pp. 971-972; *People v. Jenkins* (2021) 70 Cal.App.5th 924.)

At the prima facie stage, the trial court's inquiry "is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime)." (*People v. Drayton* (2020) 47 Cal.App.5th 965, 980, abrogated on another point of law in *People v. Lewis*, *supra*, 11 Cal.5th at p. 963.)

*B. Garcia's Record of Conviction*

The trial court instructed the jury on general aiding and abetting principles, in part, as follows: "A person may be guilty of a crime in two ways. One, he may have directly committed the crime. I will call that person the perpetrator. Two, he may have aided and abetted a perpetrator, who directly committed the crime. A person is equally guilty of a crime whether he committed it personally or aided and abetted the perpetrator . . . ." (CALRIM No. 400.)

The court further instructed on aiding and abetting intended crimes, in part, as follows: "To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that: [¶] 1. The perpetrator committed the crime; [¶]

7

2. The defendant knew that the perpetrator intended to commit the crime; [¶] 3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; [¶] AND [¶] 4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime. [¶] Someone aids and abets a crime if he knows of the perpetrator's unlawful purpose and he specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime." (CALCRIM No. 401.)

The court instructed on murder with malice, in part, as follows: "The defendant is charged in Count 1 & 2 with murder in violation of Penal Code section 187. To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant committed an act that caused the death of (another person); [¶] AND [¶] 2. When the defendant acted, (he) had a state of mind called malice aforethought (;/.) [¶] AND [¶] (He) killed without lawful (excuse/or justification).] [¶] The defendant acted with malice if (he) unlawfully intended to kill." (CALCRIM No. 520.)

The court instructed on first degree murder, in part, as follows: "If you decide that the defendant has committed murder, you must decide whether it is murder of the first or second degree. [¶] . . . [¶] The defendant is guilty of first degree murder if the People have proved that he acted willfully, deliberately, and with premeditation. The defendant acted willfully if he intended to kill. The defendant acted deliberately if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. The defendant acted with premeditation if he decided to kill before completing the act that caused death." (CALCRIM No. 521.)

*C. Analysis and Application*

"Malice is express when there is manifested a deliberate intention to unlawfully take away the life of a fellow creature." (§ 188, subd. (a)(1).) "Except [under

8

the felony-murder rule], in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) "If it is shown that the killing resulted from an intentional act with express or implied malice . . . no other mental state need be shown to establish the mental state of malice aforethought." (§ 188, subd. (b).)

Here, the first degree murder convictions and the related instructions establish Garcia acted with express malice (the mens rea). (See, e.g., CALCRIM No. 521, second italics added ["The defendant acted *willfully* if (he/she) *intended to kill*"].) The first degree murder convictions and the related instructions also establish Garcia committed acts that caused the two deaths (the actus reus), either as the perpetrator or as a direct aider and abettor. (See, e.g., CALRIM No. 521, second italics added ["The defendant *acted with premeditation* if (he/she) decided to kill *before completing the act[s] that caused death*"].)

Significantly, the trial court did not instruct Garcia's jury on the felony-murder rule or the natural and probable consequences doctrine. Consequently, the record of conviction establishes Garcia could still be convicted of murder under current law (ether as the actual shooter or a direct aider and abettor). (See *People v. Offley*, *supra*, 48 Cal.App.5th at pp. 595-596 [direct aider and abettor liability is still a valid legal theory].)

Thus, the trial court properly found Garcia is ineligible for relief from his two murder convictions at the prima facie stage. (See § 1170.95.)

Garcia argues the terms "defendant," "perpetrator," "principal," and "suspects" were used interchangeably in the jury instructions and in the prosecutor's closing argument, and therefore "it cannot be said that the jury based its findings on Mr. Garcia's *personal* actions and/or intent, as opposed to that of other principals perpetrators, and suspects." We disagree.

9

Within the jury instruction on aiding and abetting, the court explained to the jury: "A person may be guilty of a crime in two ways. One, he may have directly committed the crime. I will call that person the *perpetrator*." (Italics added; see CALCRIM No. 400.) And within the jury instruction on the firearm enhancement, the court explained to the jury: "A person is a *principal* in a crime if he directly commits the crime or . . . attempts to commit the crime." (Italics added; see CALCRIM No. 1402.)

We find the jury instructions adequately explained the terms "perpetrator" and "principal." And although the court did not define the terms "defendant" or "suspects," both words are commonly used and are well understood (e.g., Garcia was repeatedly referred to as the "defendant" throughout the trial).

In short, when we consider the entirety of the jury instructions, we do not agree with Garcia that the words "defendant," "perpetrator," "principal," and "suspects" were used interchangeably or were likely to have been misunderstood. And as far as any possible interchangeable use of the four words during the prosecutor's closing argument (or any argument that may have been in conflict with the jury instructions), we presume the jurors were able to understand and follow the court's instructions. (See *People v. Ibarra* (2007) 156 Cal.App.4th 1174, 1190 ["we apply the usual presumption that jurors are able to correlate, follow, and understand the court's instructions"].)

Garcia also argues when the trial court denied his section 1170.95 petition, the court mistakenly reasoned the jury necessarily found him "to be the actual shooter." (See *People v. Offley*, *supra*, 48 Cal.App.5th at pp. 595-596.) We agree, but this does not alter our analysis or holding.

The jury's true finding on the firearm enhancement established Garcia "*or any other principal* . . . discharged a firearm causing death . . . ." (§ 12022.53, subds. (d) & (e)(1), italics added.) Thus, without weighing the facts, by finding the firearm enhancement true as to both murder counts, the jury found either Garcia *or one of his*

10

*fellow gang members shot the two victims* (or some combination thereof).

However, the court's mistaken reasoning about the firearm enhancement does not alter the correctness of its ruling that the record of conviction establishes Garcia is ineligible for relief under section 1170.95 as a matter of law. (See *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 364-365 ["'On appeal we consider the correctness of the trial court's ruling *itself*, not the correctness of the trial court's *reasons* for reaching its decision'"].) Again, the jury's two first degree premeditated murder convictions establish that the jury found Garcia acted with express malice as either the actual shooter or as a direct aider and abettor as to both murder counts.

Finally, Garcia argues the trial court erroneously instructed the jury within the general instruction on aiding and abetting (the last bracketed paragraph): "Under some specific circumstances, if the evidence establishes aiding and abetting of one crime, a person may also be found guilty of other crimes that occurred during the commission of the first crime." (See CALCRIM No. 400.) Again we agree, but this also does not alter our analysis.

As clarified in the Bench Notes for the aiding and abetting instruction: "If the prosecution is also relying on the natural and probable consequences doctrine, the court should also instruct with the last bracketed paragraph." (CALCRIM No. 400.) Here, the prosecution did not rely on the natural and probable consequences doctrine. Therefore, the trial court should not have instructed the jury with the last bracketed paragraph of the pattern aiding and abetting instruction.

However, the jury could not have relied on the natural and probable consequences doctrine because they were not so instructed. (See *People v. Lewis*, *supra*, 11 Cal.5th at p. 971 [trial court may deny resentencing petition at prima facie stage if record of conviction refutes petitioner's allegations]; *People v. Daniel* (2020) 57 Cal.App.5th 666, 676-677 [trial court may deny petition for resentencing if jury

11

instructions show jury was not instructed on either natural and probable consequences or felony murder doctrines], review dism. and cause remanded Dec. 1, 2021, S266336.)

In sum, the instructional error by the trial court in 2009 does not alter our analysis that the trial court in 2021 properly denied Garcia's section 1170.95 petition.


## III

## DISPOSITION

The trial court's order denying Garcia's section 1170.95 petition as to his two first degree murder convictions is affirmed.

As to Garcia's attempted murder conviction, the trial court is directed on remand to appoint counsel. The court is further directed to receive briefing, to consider Garcia's petition at the prima facie stage, and to make any orders and/or conduct any further proceedings as warranted.


MOORE, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


GOETHALS, J.